SHAWN RUSSUM,

      Plaintiff,

      v.

ISG RIVERDALE, INC., a Delaware
Corporation,

      Defendant.

No. 04 C 2924
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Plaintiff Shawn Russum has filed a claim against ISG Riverdale, Inc. ("ISG") for negligence which resulted in his injury while working on its premises. ISG has, in turn, filed a third-party complaint against Eagle Services Corp. ("Eagle"), Russum's employer. Eagle now files for summary judgment on the claims alleged against it. For the reasons below, Eagle's motion is denied.

### I. Facts

Russum was employed by Eagle under a contract with ISG to clean hot ash material from the hoppers in an ISG facility in Riverdale, Illinois. On March 3, 2004, hot ash fell on top of him and buried him while he was working in a hopper. He claims that the accident occurred due to the negligence of ISG. After Russum filed suit alleging negligence against ISG, ISG filed a three-count third-party claim against Eagle.

In Count I, ISG claims that under the terms of its contract with Eagle, Eagle is required to indemnify ISG for costs, expenses, and attorneys' fees. Count II seeks contribution from Eagle under the Illinois Joint Tortfeasor Contribution Act for the amount equal to its *pro rata* share of

liability.  ISG claims this share should be one hundred percent, because all of the activities engaged in by Russum were under Eagle's complete control and direction.  Count III alleges that Eagle failed to obtain the proper insurance agreed upon in the contract and, as a result, Eagle must compensate ISG for any and all attorneys' fees, costs, expenses, and any judgment entered against ISG.

Eagle has now filed a motion for summary judgment on the grounds that ISG is seeking indemnity for its own negligent acts, which is barred under Illinois law.  Eagle also claims that it purchased the appropriate insurance coverage, as required by the contract.  Both parties agree that Illinois Law governs this case.

### Summary Judgment Standard

Summary judgment is proper if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P.* 56(c).  *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-33 (1986).  A genuine issue of material fact exists when there is evidence on the basis of which a reasonable jury could find in the plaintiff's favor, allowing for all reasonable inferences drawn in a light most favorable to the plaintiff.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  The movant must offer more than "[c]onclusory allegations, unsupported by specific facts" in order to establish a genuine issue of material fact.  *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

### Analysis

**Indemnity**

Eagle first claims that Count I of the Third-Party Complaint is invalid because the Construction Contract Indemnification for Negligence Act (the "Indemnity Act,"), 740 ILCS 35/1, applies to this case and bars ISG from forcing Eagle to indemnify it for any expenses and losses associated with Russum's suit. The Indemnity Act states:

> With respect to contracts or agreements, either public or private, for the construction, alteration, repair or maintenance of a building, structure, highway bridge, viaducts or other work dealing with construction, or for any moving, demolition or excavation connected therewith, every covenant, promise or agreement to indemnify or hold harmless another person from that person's own negligence is void as against public policy and wholly unenforceable.

740 ILCS 35/1. The policy behind this clause is to motivate contractors to take all necessary precautions for the safety of construction workers and the general public. *See Davis v. Commonwealth Edison Co.*, 336 N.E.2d 881, 884 (Ill. 1975).

ISG initially counters by arguing that Eagle has not met the two prerequisites in order to bar an agreement under the Indemnity Act. First, it claims that the Indemnification Act enumerates the activities that fall under its jurisdiction, and Eagle has not established that the contract between the two parties or the work Russum was performing involved any of those activities. Second, even if the Indemnity Act were to apply, the contract must express its intention to relieve ISG of its liability in unequivocal terms.

ISG has not supplied any facts that contradict Eagle's contention that Russum was cleaning ash out of a hopper at the time of the accident. That activity seems to clearly fall within the bounds of maintaining a structure. *See, e.g., Doran v. Corn Products-U.S., Div. of CPC,*

3

*Int'l, Inc.*, 776 F. Supp. 368, 374 (N.D. Ill. 1991) (cleaning a precipitator qualified as maintenance of a structure); *Liccardi v. Stolt Terminals, Inc.*, 687 N.E.2d 968 (Ill. 1997) (contract for cleaning oil out of a tanker fell under the Indemnity Act).

Next, ISG claims that the contract does not expressly state the intention of relieving ISG of liability for its own negligence. The intention to relieve a party of its liability for its own negligence must be "expressed in unequivocal terms" *Dowling v. Otis Elevator Co.*, 549 N.E.2d 866, 870 (Ill. App. Ct. 1989); *see also Biedzycki v. Northeast Ill. Regional Commuter R.R. Corp.*, No. 96 C 571, 1998 U.S. Dist. LEXIS 4001, at *8 (N.D. Ill. Mar. 27, 1998). The indemnity clause at issue in this case is in Section 25 of Appendix B and it states:

> Contractor expressly agrees to protect, defend, indemnify and save harmless ISG, its affiliated companies, and their employees and agents from and against any and all liability, loss, damages, costs and expenses of every character whatsoever . . . caused by, resulting from, arising out of, or occurring in connection with the performance of the Work . . . .

Ordinarily, a clause such as this would be held void under the Indemnity Act. *See W.E. O'Neil Constr. Co. v. General Cas. Co.*, 748 N.E.2d 667, 671-72 (Ill. App. Ct. 2001). However, Section 25(c) contains a clause that limits the liability under certain circumstances:

> In any jurisdiction wherein a provision (or a Contract containing a provision) of requiring Contractor to indemnify ISG against the consequences of ISG's negligence would be void or unenforceable, the foregoing indemnification provision shall be deemed to apply only to such matters, excluding ISG's negligence, as may be validly indemnified against in any such jurisdiction.

Since the terms of the contract can be reasonably construed to preclude Eagle from indemnifying ISG for ISG's own negligence, the contract does not expressly violate the Indemnity Act. *See Liccardi*, 669 N.E.2d at 1198-99. The indemnity clause is presumed only to indemnify ISG against the negligence of a party other than ISG. *See Biedzycki*, 1998 U.S. Dist. LEXIS 4001, at

*8.  Therefore the indemnity clause is valid and enforceable because it does not ask for indemnification of ISG's own negligence.  Summary judgment on Count I is denied.

**Contribution**

Eagle also contends that Count II of ISG's third-party complaint should be dismissed because it only purports to ask for contribution from Eagle in proportion to its culpability, as described in the Illinois Joint Tortfeasor Contribution Act, 740 ILCS 100/1 *et seq*. (The "Contribution Act").  Eagle argues that the claim asks for indemnity in a different manner from count I by stating that the portion of Eagle's contribution in a judgment against the parties would be the entire amount of the judgment.  According to Eagle, this would be the same as ISG forcing Eagle to indemnify it for any payments.

Contribution is a remedy used to allocate responsibility for the total loss from a tort between multiple culpable tortfeasors when one tortfeasor has paid more than its *pro rata* share of the liability.  *See Stifle v. Marathon Petroleum Co.*, 876 F.2d 552, 559 (7th Cir. 1989); *People v. Brockman*, 574 N.E.2d 626, 631 (Ill. 1991).  The Contribution Act states that "where 2 or more persons are subject to liability in tort arising out of the same injury to person or property, or the same wrongful death, there is a right of contribution among them, even though judgment has not been entered against any or all of them."  740 ILCS 100/2(a).

Eagle argues that, because Count II of the third-party claim states that ISG seeks contribution of all sums that may be adjudged in favor of Russum, the Count actually asks for indemnity.  However Eagle offers no case law to support this contention.  Although the Contribution Act abolished implied indemnity, it does not affect express indemnity, since express indemnity is based on a contractual arrangement between the parties.  *Reid v. Bootheel Transp.*

*Co.*, 771 F. Supp. 237, 240 (N.D. Ill. 1991). If there were no indemnity agreement or insurance and Eagle were completely culpable for the incident, Eagle offers no reason why ISG would not be able to recover the full amount of the damages award under a contribution theory.

Even though Russum would not be able to file a claim directly against Eagle,[1] ISG may still force Eagle to contribute based on Eagle's share of liability for the incident. Contribution is available to a third-party plaintiff even in cases where the original plaintiff would not be able to recover directly from the third-party defendant. *Fed. Ins. Co. v. Helmar Lutheran Church*, No. 04 C 2478, 2004 U.S. Dist. LEXIS 26877, at *10 (N.D. Ill. Dec. 14, 2004).

Although ISG may recover some amount from Eagle, the amount that ISG would be able to recover is usually limited. In *Kotecki v. Cyclops Welding Corp.*, 585 N.E.2d 1023 (Ill. 1991), the Illinois Supreme Court ruled that a third-party defendant employer's contribution liability is limited to the amount of the employer's workers' compensation liability. However, it is possible for an employer to contractually waive that limitation on its contribution liability. *Braye v. Archer-Daniels-Midland Co.*, 676 N.E.2d 1295, 1300 (Ill. 1997).

ISG claims that Eagle has waived the limitation on its contribution liability through a clause in the contract between the two parties.

> Contractor expressly waives any provision of any workers
> compensation laws whereby Contractor could preclude its joinder
> as an additional defendant, or avoid liability for damages,
> contribution or indemnity in any actions, at law or otherwise,
> where Contractor's employee or employees, their heirs, assigns, or
> anyone else entitled to receive damages by reason of injury or
> death, brings an action against ISG or any of its affiliates.

---

[1] An employee is limited to filing a workers' compensation claim against his employer in the Illinois Industrial Commission. *See* Illinois Workers Compensation Act, 820 ILCS 305/5(a).

Eagle argues that *Kotecki* and *Braye* do not apply and are irrelevant, because ISG is not actually the party that is asking for contribution. Eagle claims that the joint insurer, AIG, is improperly putting its interests ahead of those of its insured by suing one insured in order to recover the funds it paid on behalf of a coinsured. An insurer "does not have the right to manipulate an action in order to excuse itself from protecting its insureds." *Briseno v. Chicago Union Station Co.*, 557 N.E.2d 196, 199 (Ill. App. Ct. 1990).

Although this case initially seems analogous to *Briseno* because of Eagle's claim that AIG has taken over ISG's defense, unlike *Briseno,* liability has not yet been resolved in Russum's underlying action. Eagle is correct in stating that nothing in *Briseno* explicitly requires a settlement in order for me to grant summary judgment, but the status of the underlying suit is critical in determining the ability of a third party plaintiff to maintain a contribution action. *See Kehoe v. Commonwealth Edison Co.*, 694 N.E.2d 1119, 1124 (Ill. App. Ct. 1998). A third-party defendant is only shielded from contributing up to the limit of the insurance coverage the parties agreed upon. *See Clarke v. Ruan Leasing Co.*, No. 91 C 20165, 1994 U.S. Dist. LEXIS 3330, at *10-11 (N.D. Ill. Mar. 18, 1994); *Vaughn v. Commonwealth Edison Co.*, 632 N.E.2d 44 (Ill. App. Ct. 1994). So, as long as the potential for a loss in excess of the limits of the insurance policy still remains, ISG is still at risk of a loss in which it could assert contribution. *Kehoe*, 694 N.E.2d at 1123.

Additionally, the status of the underlying case is also important because AIG is not yet considered a subrogee of ISG.

> Anyone who, by payment, has discharged in full or in part the liability of a tortfeasor and has thereby discharged in full his obligation to the tortfeasor, is subrogated to the tortfeasor's right of contribution.

740 ILCS 100/2(f).  Eagle admits that AIG has not discharged any of ISG's obligations, so they cannot yet be considered the true party in interest.  Therefore, at this point, I cannot dismiss the contribution claim because of *Briseno*.[2]

I will reserve ruling on whether or not *Kotecki* or *Braye* apply in this situation.  To the extent they would apply, they would only become relevant at the point at which the damages or settlement award to Russum surpassed both the insurance coverage and the amount of workers' compensation paid by Eagle.

**Insurance**

Lastly, ISG claims that Eagle breached the terms of its contract by not obtaining the proper amount of insurance specified.  Both parties agree that the amount of coverage obtained by Eagle was $5,000,000.  The contract between the parties states that Eagle must obtain a policy covering bodily injury liability claims in an amount "not less than $2,000,000 per occurrence combined single limit" and "Umbrella or Excess Liability Insurance . . . of not less than $5,000,000 per occurrence . . . ."  According to ISG, this amounts to a combined total of $7,000,000 of liability coverage.  Eagle claims that ISG has misinterpreted the contract requirement and that the limit typically stated when referring to an umbrella policy is the total amount of coverage.  In this case, that total amount would be $5,000,000.

_____

[2] Although I am denying the motion, I note ISG's contention that *Briseno* does not apply because of Eagle's separate insurance policy covering liability for employees is incorrect.  In Illinois, "employers . . . are required to maintain a workers compensation insurance policy to cover claims against them by their employees . . . because an [employee's] sole remedy is under the Workers Compensation Act."  *Clarke*, 1994 U.S. Dist. LEXIS 3330, at *9.  There is no reason for ISG to be covered under Eagle's workers' compensation policy.  The contract even requires Eagle to carry a workers' compensation insurance policy.

Eagle seeks to interpret this contract as if it were an insurance policy, citing several insurance cases to support its claim of how the number stated as the limit of an umbrella policy is treated. "[C]onstruction of an insurance policy and its provisions is a question of law" for a court to decide. *Archer-Daniels-Midland Co. v. Phoenix Assurance Co.*, 975 F. Supp. 1129, 1132 (S.D. Ill. 1997). However it is important to note that, although the language describes the type of insurance policy that Eagle should take out, the contract itself is not an insurance policy. Therefore I will analyze it according to the ordinary rules of contract interpretation.

When construing a contract, the court must first determine "as a question of law, whether the language of a purported contract is ambiguous as to the parties' intent." *Quake Constr., Inc. v. American Airlines, Inc.*, 565 N.E.2d 990, 994 (Ill. 1990). If there is no ambiguity, the parties' intent must be derived from the writing itself, as a matter of law. *Id.* However, if the language of the contract is ambiguous, the trier of fact should determine its meaning. *Brooklyn Bagel Boys, Inc. v. Earthgrains Refrigerated Dough Prods.*, 212 F.3d 373, 378 n.1 (7th Cir. 2000). A contract is ambiguous if it is "reasonably and fairly susceptible to more than one construction." *Id.* at 378 n.2.

In Illinois, contract construction depends on both the language of the contract itself (intrinsic ambiguity) as well as whether or not "some extrinsic fact or extraneous evidence creates a necessity for interpretation or a choice among two or more possible meanings," (extrinsic ambiguity). *Licciardi v. Kropp Forge Div. Employees' Retirement Plan*, 797 F. Supp. 1375, 1381 (N.D. Ill. 1992). The two parties' disagreement about the meaning of a contract does not necessarily make it ambiguous. *Earthgrains*, 212 F.3d at 378 n.2.

Stripped of the extraneous words, the clause essentially states that the umbrella policy shall have a limit "of not less than $5,000,000 per occurrence." If this were referring to an ordinary policy, then it would be clear that the amount stated would be the limit of that policy. The difficulty in this case is that an umbrella policy must always reference at least one underlying policy because "liability [for the excess policy] attaches only after a predetermined amount of primary coverage has been exhausted." *Phoenix*, 975 F. Supp. at 1134 (quoting *Whitehead v. Fleet Towing Co.*, 442 N.E.2d 1362, 1366 (Ill. App. Ct. 1982)).

Nothing in the actual words of the contract clarifies whether the limit mentioned is the combined limit of the primary and excess policies or the amount of extra coverage that the excess policy should provide. Both parties' contentions are reasonable and fair interpretations of the contract language. In addition, an extrinsic fact that creates a "necessity for interpretation or choice" is that the contract required Eagle to present ISG with copies of the various policies before work started, presumably for ISG to approve them. This lends some credence to Eagle's interpretation. I find that the contract language is ambiguous as a matter of law, and the final determination of its meaning must be left for the trier-of-fact.

For the aforementioned reasons, Eagle's motion for summary judgment is denied without prejudice.


ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge


DATE: August 30, 2006